UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYSE SEN,<br><br>                              Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>                              Defendant. | Case No.: 3:16-CV-01486-JAH-JLB<br><br>**ORDER GRANTING DEFENDANT AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S IN LIMINE MOTION AS MOOT** |

## **INTRODUCTION**

Pending before the Court is Defendant Amazon.com, Inc.'s ("Defendant" or "Amazon") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. No. 32]. Ayse Sen's ("Plaintiff") complaint alleges trademark infringement in violation of 15 U.S.C § 1114(1)(a), unfair competition, false designation of origin, passing off, and false advertising in violation of 15 U.S.C §1125(a), and tortious interference with business relations or an economic advantage. Id. After a careful review of the pleadings filed by both parties, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

\\

\\

1

# BACKGROUND

## I. Factual Background

Plaintiff is the owner of the trademark "Baiden," and uses the mark in association with the marketing and selling of her "Baiden" skin-exfoliation products. See Doc. No. 1, ¶ 21. Defendant owns and operates Amazon.com which is a prominent e-marketplace. Id. at ¶ 6. Plaintiff uses Amazon's platform to sell her products. Id. at ¶ 11. Defendant purchases certain keywords for use in sponsored advertising, and as relevant to this case, purchased the keyword "Baiden" through Google's AdWords[1] program and on similar programs offered by "Bing.com" and "Yahoo.com." See Doc. No. 32–2, ¶ 2.

On December 4, 2012, Plaintiff initiated a lawsuit in this district against Defendant alleging violations of the Lanham Act for trademark infringement and unfair competition ("Initial Action"). See Doc. No. 32-2, Ex A (Case No. 12-cv-2878-AJB-BGS). In the initial action, Plaintiff alleged that Defendant used her "Baiden" mark in online pay-per-click campaigns and keyword advertising on various search engines without Plaintiff's express authorization. Id. The complaint alleged that the campaigns diverted online traffic to a landing page on Amazon's website displaying competitor products which reduced her online traffic and decreased sales for her products. Id. On July 9, 2013 the Plaintiff and Defendant reached a settlement agreement in the initial action and executed a Settlement Memorandum of Understanding ("MOU"). Doc. No. 32–2, Ex C. The parties were unable to agree to the terms of the long form agreement and on October 9, 2013, Defendant moved to enforce the MOU. See Doc. No. 32–2, Ex D. On December 19, 2013, the Honorable

---

[1] "Google AdWords is a program through which the search engine sells 'keywords,' or search terms that trigger the display of a sponsor's advertisement. When a user enters a keyword, Google displays the links generated by its own algorithm in the main part of the page, along with the advertisements in a separate 'sponsored links' section next to or above the objective results. Multiple advertisers can purchase the same keyword, and Google charges sponsors based on the number of times users click on an ad to travel from the search results page to the advertiser's own website. Network purchased 'ActiveBatch' as a keyword from Google AdWords and a comparable program offered by Microsoft's Bing search engine." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1142–43 (9th Cir. 2011)

Anthony J. Battaglia granted Amazon's motion to enforce the settlement on the terms set forth in the MOU. Id.

## II.  Procedural Background

On June 15, 2016, Plaintiff initiated the instant action, again alleging claims for federal trademark infringement in violation of 15 U.S.C. § 114 and federal unfair competition, false designation of origin, passing off and false advertising. Doc. No. 1, ¶¶ 26–33. Additionally, Plaintiff brings a third claim for tortious interference with Plaintiff's prospective and actual business relations, and interference with an economic advantage. Id. at ¶¶ 34–35. Defendant filed an Answer to the Complaint alleging twenty-four affirmative defenses, including Release of Claims, Estoppel, and Waiver of Right to Assert Claims. See Doc. No. 5. On November 8, 2016, Defendant filed an amended answer asserting immunity under the Communications Decency Act of 1996 as an additional affirmative defense. See Doc. No. 27. On March 8, 2017, Defendant filed the Motion for Summary Judgment now before the Court. See Doc. No. 39. A hearing was held on May 9, 2017 for purposes of oral argument on Defendant's motion. See Doc. No. 45. However, the matter was taken under submission by the Court without oral argument when Plaintiff failed to appear for that hearing. Id.

## **LEGAL STANDARD**

Summary judgment is properly granted when "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Id. at 323. A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)). The materiality of a fact is thus determined by the substantive law governing the claim or defense. Id. Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion. Anderson, 477 U.S. at 256.

To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Nevertheless, inferences must be made upon a reasonable basis, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## **DISCUSSION**

As an initial matter, Defendant requests the Court take judicial notice of certain facts concerning the initial action between the parties. See Doc. No 32–2. Specifically, Defendant requests the Court take judicial notice that Plaintiff filed a lawsuit against Defendant on December 4, 2012, that the parties entered into a MOU on July 9, 2013, and that the court granted Defendant's motion to enforce the settlement on December 19, 2013. Id., Exhibits A, C, D. The Court may take judicial notice of an adjudicative fact "not subject to reasonable dispute because it can be . . . accurately and readily determined from sources whose accuracy cannot be reasonably questioned." See Fed. R. Evid. 201; Grason Elec. Co. v. Sacramento Mun. Util. Dist., 571 F. Supp. 1504, 1521 (E.D. Cal. 1983). Moreover, the Ninth Circuit has confirmed that "a court may take judicial notice of its own records." U.S. v. Author Svcs., Inc., 804 F.2d 1520, 1522 (9th Cir.1986). Accordingly, Defendant's request for judicial notice is **GRANTED**.

\\

## I. Lanham Act Claims

As stated above, Plaintiff alleges two "Lanham Act" claims for federal trademark infringement in violation of 15 U.S.C. § 1114 and federal unfair competition, false designation of origin, passing off, and false advertising in violation of 15 U.S.C. § 1125(a). Doc. No. 1, ¶¶ 26–33. Plaintiff alleges that her Lanham Act claims arise from two separate and distinct wrongful acts perpetrated by Defendant: (1) the unauthorized use of Plaintiff's "Baiden" trademark in "online pay-per-click" campaigns; and (2) permitting the use of Plaintiff's trademark in an online review, which promoted and advertised a competing product. See Doc. No. 1, ¶¶ 8–9. The Court will address each in turn below.

### a. Use of Plaintiff's trademark in online pay-per-click campaigns

Notwithstanding Defendants arguments that Plaintiff's claims were released in the prior action, the Court finds that Plaintiff's claims concerning the use of Plaintiff's trademark in pay-per-click campaigns are barred by the doctrine of claim preclusion. The United States Supreme Court has observed that a federal district court may *sua sponte* raise the issue of claim or issue preclusion under certain circumstances. "Most notably, if a court is on notice that it has previously decided the [claims] presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." Arizona v. California, 530 U.S. 392, 412 (2000). Under federal law, claim preclusion bars "lawsuits on 'any claims that were raised or could have been raised' in a prior action." Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir.2002) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir.2001)). Claim preclusion is appropriate when the following three elements are satisfied: (1) an identity of the claims, (2) the previous action must have resulted in a final judgment on the merits, and (3) the present action must involve the same parties or persons in privity of interest. Providence Health Plan v. McDowell, 385 F.3d 1168, 1173-1174 (9th Cir.2004).

Identity of claims is determined by considering the following factors: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions. Mpoyo v. Litton Electro–Optical Systems, 430 F.3d 985, 987 (9th Cir.2005). The "central criterion," however, in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same nucleus of transactional facts. Id. at 987, citing Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir.1992). Here, it is clear that the claims in the initial action and Plaintiff's Lanham Act claims in the present action, so far as they concern Defendant's pay-per-click campaigns, arise out of the same transactional nucleus of facts. The Court notes that all relevant portions of Plaintiff's complaint concerning Defendant's use of pay-per-click campaigns are copied verbatim from the complaint in the initial action. See Doc. Nos. 1, 1–2; cf. Doc. No. 32–2, Exhibit A. Additionally, Plaintiff submitted screenshots of search engine results and of Amazon's landing page that are substantially identical to ones filed in the initial action. Id. Plaintiff fails to distinguish–either factually or temporally–her current trademark infringement claim based on Defendant's pay-per-click campaign from that which she alleged in the initial action. As such, the Court finds the first factor is satisfied.

There can be little dispute regarding the second and third factors. First, the initial action included the identical parties to this case, Ayse Sen and Amazon.com, Inc. See Doc. No. 32–2, Ex. A. Also, the initial action resulted in a final judgment on the merits. The dismissal of an action with prejudice pursuant to a settlement agreement "constitutes a final judgment on the merits." Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993) (citing Lawrence v. Steinford Holding B.V., 820 F.2d 313, 316–17 (9th Cir.1987)); see also Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)). On December 19, 2013, the initial action was dismissed with prejudice when the Honorable Anthony J. Battaglia

granted Amazon's motion to enforce the settlement on the terms set forth in the MOU. See Doc. No. 32–2, Ex D. Because the Court finds that all three factors support claim preclusion, Plaintiff's Lanham Act claims based on the unauthorized use of Plaintiff's "Baiden" trademark in "online pay-per-click" campaigns are precluded, and Defendant is entitled to summary judgment on these claims.

### b. Use of Plaintiff's trademark in an online review[2]

Plaintiff alleges that Defendant is contributory and vicariously liable for trademark infringement stemming from a review of Plaintiff's product posted on Defendant's website. Doc. No. 1, ¶ 23. In a review of Plaintiff's "Baiden Mitten" product, an Amazon user utilizing the name "Nanners," wrote that she initially purchased the "Baiden Mitten" product which caused her to recall a similar product from her childhood. Doc. No. 1-2, Ex. B. The review uses the "Baiden" name in discussing Plaintiff's product, as well as declaring that a competing product is cheaper and delivers similar benefits. Id. Plaintiff alleges that "Nanner's" review infringed her trademark, which has interrupted Plaintiff's ongoing business and damaged her reputation. Doc. No. 1, ¶ 12-15. By allowing the review to remain displayed under her product, Plaintiff alleges Amazon is contributory and vicariously liable for the resulting harms. Id. at ¶ 33.

Defendant argues that Plaintiff's Lanham Act claims, predicated on "Nanner's" review of her product, are barred by the nominative fair use doctrine. See Doc. No. 32 – 1, pg. 25. A nominative fair use defense is appropriate when a "defendant has used [a] plaintiff's mark 'to describe the plaintiff's product' for the purpose of, for example, comparison to the defendant's product." Id. (emphasis in original) (quoting New Kids on the Block v. News Am. Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992)). To establish a nominative fair use defense, the defendant must prove three elements: (1) the [plaintiff's]

---

[2] Plaintiff's Lanham Act claim, as supported by the online review, is not subject to claim preclusion because it was not presented in the initial claim and arises out of a facts which were not known to Plaintiff at the time of the initial action.

product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. New Kids on the Block v. News Am. Publ'g, Inc., 971 F.3d 302, 308 (9th Cir. 1992) ).

Defendant contends that "Nanner's" review satisfies the three pronged New Kids on the Block test. First, Defendant argues that Plaintiff's trademark and product are essentially inseparable, because one cannot identify Plaintiff's product without using its name, the "Baiden Mitten." The Ninth Circuit has explained that the use of a trademark to identify a certain product satisfies the first prong of the nominative fair use test particularly in situations "where the [trademark is the] only word reasonably available to describe [that] particular thing." Id. at 308. That is certainly the case here. "Nanner's" review uses the Plaintiff's trademark only to alert her readers as to what fabric exfoliation product she is currently discussing. Also met are the second and third requirements. "Nanner's" review references Plaintiff's trademark only to the extent necessary to identify the product she is reviewing. And "Nanner's" does not use the distinctive logo of Plaintiff's trademark or any other identifying feature. Finally, nothing in "Nanner's" review suggests joint sponsorship or endorsement by Plaintiff or the "Baiden Mitten" brand. Quite the contrary as the review actually implies that there are "monumentally cheaper" products available on the market. The Court therefore holds that "Nanner's" use of Plaintiff's "Baiden" trademark in her review, and by extension Defendant's publishing of such a review, was a permissible nominative fair use. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Lanham Act claims.[3]

\\

\\

---

[3] Finding summary judgment appropriate on these grounds, the Court will not discuss Defendant's remaining arguments.

8

## II. Tortious Interference

Plaintiff's third cause of action is for tortious interference with Plaintiff's prospective and actual business relations, and interference with an economic advantage. See Doc. No. 1, ¶¶ 34–35. Such a claim requires a showing of: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153, 63 P.3d 937 (2003). Accordingly, the Plaintiff must establish that the "defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." Hsu v. OZ Optics, Ltd., 211 F.R.D. 615, 620 (N.D.Cal.2002) (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995)). Stated differently, "[i]t is ... the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful." Hsu, 211 F.R.D. at 620. Plaintiff has alleged that her business has "experienced [an] interruption of its ongoing business activities . . . and has suffered irreparable damage to its business reputation and good will" as a result of Defendant's pay-per click campaigns and "allowing advertising under her listing to a competitive product." Id. Defendant argues that Plaintiff's tortious interference claim fails as a matter of law because none of Defendant's alleged conduct was independently wrongful, and as predicated on "Nanner's" review, Amazon is immune from liability under the Communications Decency Act ("CDA"). See Doc. No. 32–1, pgs. 27–31.

### a. Tortious interference claim based on Defendant's pay-pay-click campaigns

As discussed in length above, to the extent that Plaintiff's tortious interference claim is based on Defendant's use of her trademark in any pay-per-click campaigns, it is

9

precluded. Plaintiff relies on identical allegations to assert both Lanham Act claims and her tortious interference claim, therefore, the Court finds that these two claims share a transactional nucleus of facts and could have been conveniently tried together in the initial action. Mpoyo v. Litton Electro–Optical Sys., 430 F.3d 985, 987 (9th Cir.2005). As such, Plaintiff's tortious interference claim, as it pertains to Defendant's pay-per-click advertising is precluded.

### b. **Tortious interference claim based on "Nanner's" review[4]**

Defendant next contends that Plaintiff's tortious interference claim, as predicated on "Nanner's" review, fails as a matter of law because Defendant is immune from liability under the CDA. This Court agrees. Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). "Three elements are required for § 230 immunity: (1) the defendant must be a provider or user of an "interactive computer service"; (2) the asserted claims must treat the defendant as a publisher or speaker of information; and (3) the challenged communication must be "information provided by another information content provider." Batzel v. Smith, 333 F.3d 1018, 1037 (9th Cir. 2003) (quoting 47 U.S.C. § 230(c)(1)).

First, the Court finds the rationale of numerous other courts persuasive, and agrees that Defendant is undoubtedly a provider of "interactive computer services."[5] See e.g., Joseph v. Amazon.com, Inc., 46 F. Supp. 3d 1095, 1106 (W.D. Wash. 2014) ("Amazon

---

[4] Again, Plaintiff's claims concerning "Nanner's" review are not precluded by the initial action. Plaintiff alleges that she did not become aware of this review until September of 2013, which was several months after she signed the binding MOU. See Doc. No. 1, ¶ 11. Because this claim, based on "Nanner's" review, could not have been brought in the initial action, claim preclusion is inapplicable. See Vacchiano v. Wessell, No. CV122003DSFVBKX, 2013 WL 12155181, at *1 (C.D. Cal. Nov. 25, 2013).

[5] The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

| | |
|---|---|
| 1 | constitutes an 'interactive service provider'. . . ."); Schneider v. Amazon, 108 Wash.App. |
| 2 | 454, 463, (Wash.2001) (finding Amazon to be an interactive service provider and entitled |
| 3 | to immunity from claims based on defamatory reviews by third parties); Almeida v. |
| 4 | Amazon.Com, Inc., No. 04-20004-CIV, 2004 WL 4910036, at *4 (S.D. Fla. July 30, 2004), |
| 5 | aff'd, 456 F.3d 1316 (11th Cir. 2006) ("It is irrefutable that Defendant Amazon is an |
| 6 | "interactive computer service."). Additionally, Defendant has established the second and |
| 7 | third elements required for CDA immunity. Plaintiff's allegation concern a review posted |
| 8 | by an Amazon user, "Nanner," who acted as an independent content provider when she |
| 9 | posted her review of Plaintiff's "Baiden Mitten" product. Plaintiff wishes to hold |
| 10 | Defendant liable for failing to remove a review–published by an independent third-party |
| 11 | user–which she alleges has infringed her trademark. This is the precisely the type of claim |
| 12 | Congress sought to shield "interactive computer services" from with the passage of the |
| 13 | CDA. "In passing section 230, Congress sought to spare interactive computer services this |
| 14 | grim choice by allowing them to perform some editing on user-generated content without |
| 15 | thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't |
| 16 | edit or delete." Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 |
| 17 | F.3d 1157, 1163 (9th Cir. 2008). Accordingly, the Court finds that Plaintiff has failed to |
| 18 | show that a genuine issue of material fact exists sufficient to defeat Defendant's motion for |
| 19 | summary judgment on her tortious interference claim. Accordingly, Defendant is entitled |
| 20 | to summary judgment in its favor. |
| 21 | \\ |
| 22 | \\ |
| 23 | \\ |
| 24 | \\ |
| 25 | \\ |
| 26 | \\ |
| 27 | \\ |
| 28 | \\ |

11

3:16-CV-01486-JAH-JLB

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Doc. No. 32] is **GRANTED** in its entirety[6];
2. Defendant's In Limine Motion to Exclude Expert Testimony [Doc. No. 42] is **DENIED as moot**;
3. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**

DATED: September 27, 2018

_____
JOHN A. HOUSTON
United States District Judge

---

[6] Plaintiff briefly mentions in her complaint that her claims arise under the Copyright Act of 1976, 17 U.S.C. § 101, yet in her opposition to Defendant's motion, she admits she does not own a copyright. See Doc. No. 40, pg. 8. However, she asserts she is still entitled to relief pursuant to California law. Plaintiff is mistaken; relief for copyright infringement is a federal matter, which is only available to owners of a valid copyright. 17 U.S.C. § 411(a) (2018); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). To the extent that Plaintiff has alleged a claim of copyright infringement, her admission that she does not own a valid copyright, entitles Defendant to summary judgment on that claim.