UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYSE SEN,<br><br>                    Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>                    Defendant. | Case No.:  16cv1486-JAH (JLB)<br><br>**ORDER GRANTING DEFENDANT AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 32)** |

## **INTRODUCTION**

Pending before the Court is Defendant Amazon.com, Inc.'s ("Defendant" or "Amazon") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doc. No. 32. Plaintiff Ayse Sen's ("Plaintiff") complaint alleges: (1) trademark infringement in violation of 15 U.S.C § 1114(1)(a); (2) unfair competition, false designation of origin, passing off, and false advertising in violation of 15 U.S.C §1125(a), and (3) tortious interference with business relations or an economic advantage. *Id.* The Ninth Circuit affirmed summary judgment as to Plaintiff's claims based on the third party "Nanners" review. *See* Doc. No. 74. Therefore, the Court will only address Amazon's use of Plaintiff's "Baiden" trademark in Amazon's on-site and keyword advertising (also known as pay-per-click). Having carefully considered the pleadings, and for the reasons set forth below, Defendant's motion for summary judgment is **GRANTED.**

///

# BACKGROUND

## I. Factual Background

Plaintiff is the owner of the trademark "Baiden," and uses the mark in association with the marketing and selling of her "Baiden" skin-exfoliation products. *See* Doc. No. 1, ¶ 21. Defendant owns and operates Amazon.com which is a prominent e-marketplace. *Id.* at ¶ 6. Plaintiff has licensed agents that utilize Amazon's platform to sell her products. *Id.* at ¶ 11. Defendant purchases certain keywords for use in sponsored advertising, and as relevant to this case, purchased the keyword "Baiden" through Google's AdWords program and on similar programs offered by "Bing.com" and "Yahoo.com." *See* Doc. No. 32–2, ¶ 2.

On December 4, 2012, Plaintiff initiated a lawsuit in this district against Defendant alleging violations of the Lanham Act for trademark infringement and unfair competition ("Initial Action"). *See* Doc. No. 32-2, Ex A (Case No. 12-cv-2878-AJB-BGS). In the initial action, Plaintiff alleged that Defendant used her "Baiden" mark in online pay-per-click campaigns and keyword advertising on various search engines without Plaintiff's express authorization. *Id.* The complaint alleged that the campaigns diverted online traffic to a landing page on Amazon's website displaying competitor products which reduced her online traffic and decreased sales for her products. *Id.* On July 9, 2013, Plaintiff and Defendant reached a settlement agreement in the initial action and executed a Settlement Memorandum of Understanding ("MOU"). Doc. No. 32–2, Ex C. The parties were unable to agree to the terms of the long form agreement, and on October 9, 2013, Defendant moved to enforce the MOU. *See* Doc. No. 32–2, Ex D. On December 19, 2013, the Honorable Anthony J. Battaglia granted Amazon's motion to enforce the settlement on the terms set forth in the MOU. *Id.*

## II. Procedural Background

On June 15, 2016, Plaintiff initiated the instant action, again alleging claims for federal trademark infringement in violation of 15 U.S.C. § 114 and federal unfair competition, false designation of origin, passing off and false advertising. Doc. No. 1, ¶¶

26–33. Additionally, Plaintiff brings a third claim for tortious interference with Plaintiff's prospective and actual business relations, and interference with an economic advantage. *Id.* at ¶¶ 34–35. On March 8, 2017, Defendant filed a motion for summary judgment. *See* Doc. No. 32. Plaintiff filed an opposition and Defendant filed a reply. *See* Doc. Nos. 40, 43. On September 28, 2018, the Court granted summary judgment for Amazon on all claims. *See* Doc. No. 64.

On October 22, 2018, Plaintiff filed an appeal to the Ninth Circuit. *See* Doc. No. 66. On February 12, 2020, the Ninth Circuit affirmed the Court's judgment as to all claims based on the third party "Nanners" review but vacated the judgment that the pay-per-click claims were barred by claim preclusion and remanded for further. *See* Doc. No. 74. Plaintiff and Defendant filed supplemental briefs in support of and in opposition to the motion for summary judgment as to the pay-per-click claims. *See* Doc. Nos. 78, 81.

## LEGAL STANDARD

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Id.* at 323. A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *Id.* Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion. *Anderson*, 477 U.S. at 256.

///

To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Nevertheless, inferences must be made upon a reasonable basis, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

### I. Lanham Act Claims

Plaintiff alleges two Lanham Act claims: federal trademark infringement in violation of 15 U.S.C. § 1114 and federal unfair competition, false designation of origin, passing off, and false advertising in violation of 15 U.S.C. § 1125(a) ("Lanham Act claims"). Doc. No. 1, ¶¶ 26–33. Amazon contends Plaintiff's Lanham claims fail as they were released in the initial action's MOU and that there is no likelihood of confusion created by Amazon's use of "Baiden" as a keyword. Doc. Nos. 32 at 13-15; 78 at 3-5. The Court will discuss each in turn.

**A. Plaintiff's Lanham Claims were Released in the Initial Action**

Amazon contends that Plaintiff has "given up" her Lanham Act claims by entering into the MOU, as those claims were also related to Amazon's use of "Baiden" in keyword and advertisements, which was the nucleus of the initial action. Doc. No. 32 at 14. Plaintiff argues the Lanham claims were not released because the MOU did not apply to Amazon's action after the filing of the initial action. Doc. No. 81 at 3. The release provision contained in the MOU provides as follows:

> 2. A release of all claims, including C.C.P. § 1542 waiver, and a dismissal with prejudice of the above entitled action.

Doc. No. 32-2, Exh. C.

Federal courts interpret settlement agreements according to the principles of contract law. *Northwest Acceptance Corp. V. Lynnwood Equip., Inc.,* 841 F.2d 918, 920 (9th Cir. 1998). Although federal law governs Lanham Act claims, state law principles are applied to determine whether a settlement release is effective. *Marsdan Corp. v. CGC Music, Ltd.,* 804 F.2d 1454 (9th Cir. 1986). Under California law, "the interpretation of a settlement agreement is governed by the same principles applicable to any other contractual agreement." *Winet v. Price,* 4 Cal. App. 4th 1159, 1165 (1992); *Perfumebay.com Inc. v. eBay, Inc.,* 506 F.3d 1165, 1178 (9th Cir. 2007). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," and "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing along, if possible." Cal. Civ. Code §§ 1638-1639. In addition, "[t]he whole [] contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Id.* § at 1641. Moreover, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Id.* at § 1644. Courts view settlement agreements as final dispositions and will not adjudicate issues that have already been resolved. *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1343 (9th Cir. 1992).

Here, the parties mutually entered into the MOU. First, a release is deemed valid unless it is procured by misrepresentation, overreaching, deception, or fraud. *Jimenez v. 24 Hour Fitness USA, Inc.,* 237 Cal. App. 4th 564, 563 (2015) (holding that a genuine issue of material fact as to whether fitness center procured release from patron through fraud precluded summary judgment). Neither of the parties have alleged any fraud of deceit associated with the signing of the MOU. Second, Amazon is correct that the MOU is unambiguous in expressing the parties' agreement to release all claims between them related to Amazon's use of "Baiden" in keyword and advertisements. By including "release

of all claims" as a provision, it is reasonable to assume the parties intended to release all Lanham Act claims. Lastly, the parties also negotiated an express waiver of California Civil Code § 1542, meaning that the MOU would extend to any claims arising from the matters involved in this action.[1] The express waiver of section 1542 is further evidence in support of the Court's finding that the negotiations produced clear and unambiguous language which reflect the parties' intentions to include any future unknown claims related to the initial action. There is no evidence before the Court that Plaintiff communicated to Amazon an intention to the contrary, that is, that she desired to retain her right to sue Amazon in the future. Plaintiff's Lanham Act claims were incurred or suffered after the execution of the MOU and are identical to the parties' settled prior lawsuit; both involving allegations of confusion over Amazon's use of the "Baiden" mark. Accordingly, Plaintiff cannot prevail on her Lanham Act claims as the causes of action were previously released.

### B. There is No Likelihood of Confusion Regarding the "Baiden" Mark

Assuming Plaintiff's Lanham Act claims were not previously released, Plaintiff's causes of action fail to establish a likelihood of confusion as to Amazon's use of the "Baiden" mark in keyword advertisements. Amazon references the *Sleekcraft* factors discussed in *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011), to illustrate the lack of customer confusion between Amazon's use of the "Baiden" mark.[2] Doc. Nos. 32 at 16; 78 at 3-4. Plaintiff contends an analysis of the factors in *Network Automation* convey a genuine issue of material fact exists as to the likelihood of confusion and should be decided by the jury. Doc. No. 81 at 14.

A valid trademark infringement under 15 U.S.C. § 1114 requires a party to "prove: (1) that it has a protect[able] ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *Network Automation,* 638 F.3d at

---

[1] California Civil Code § 1542 provides that a general release does not extend to claims which the creditor does not know or suspect to exist in its favor at the time of executing the release.

[2] Although Plaintiff requested the Court to disregard the *Sleekcraft* factors, the Court must abide by Ninth Circuit precedent in analyzing trademark infringement claims.

1144. Here, Plaintiff has a valid registration of "Baiden Mitten," and Amazon does not refute the registration. Thus, Plaintiff has satisfied the first element. Turning to the second element, courts have frequently looked at the *Sleekcraft* factors in assessing the likelihood of confusion. *See, e.g., Network Automation,* 638 F.3d at 1148-54. Although the Ninth Circuit listed eight factors in particular, the Court, as in *Network Automation,* will focus on the following four factors that are most relevant to the analysis of the likelihood of confusion in the context of internet advertising: "(1) the strength of the mark; (2) the evidence of actual confusion; (3) the type of goods and degree of care likely to be exercised by the purchaser; and (4) the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Id.* at 1154. The Court will discuss each factor in turn.

### 1. Strength of Baiden Mark

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1058 (9th Cir. 1999). The "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength. *GoTo.com Inc. V. Walt Disney Co.,* 202 F.3d 1199, 1206 (9th Cir. 2000). More specifically, "[t]he mark is determined by its placement on a continuum of marks from generic, afforded no protection; through descriptive or suggestive, given moderate protection; to arbitrary or fanciful awarded maximum protection." *E. & J. Gallo Winery v. Gallo Cattle,* 967 F.2d 1280, 1291 (9th Cir. 1992).

Here, Amazon contends potential consumers are likely knowledgeable when shopping for Plaintiff's "Baiden" mark, given the type of good and the delirious effects from purchasing the wrong skin care product. Doc. No. 32 at 17. Plaintiff argues Amazon's use of the "Baiden" mark in the title distorts potential customers from separating competitors' exfoliating products from Plaintiff's products. Doc. No. 81 at 4. As for the conceptual strength, the "Baiden" mark requires a consumer to use more than a small

amount of imagination to form an association between the mark and the product, which makes the mark suggestive and not descriptive. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1218 (9th Cir. 1987). "Suggestive" marks do not "describe the product's features but suggest [] them." *Kendall-Jackson Winery v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 8 (9th Cir. 1998). The mark would only be entitled to moderate protection. *Brooklyn Brewery Corp. v. Black Ops Brewing, Inc.,* 156 F. Supp. 3d 1173, 1179 (E.D. Cal. 2016) (explaining that generic marks are afforded no protection whereas descriptive or suggestive marks are given only moderate protection). As a suggestive mark, such protection would be warranted only if the mark "acquired sufficient 'secondary meaning' to create an association between the mark and the product." *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 632 (9th Cir. 2005). In other words, Plaintiff did not prove the consumer association between the product and the "Baiden" mark. *Id.*

Once a mark is placed on the conceptual strength spectrum, the court may then assess the marks commercial strength. *Brookfield Commc'ns,* 174 F.3d at 1058. "Commercial strength is based on 'actual marketplace recognition,' and thus 'advertising expenditures can transform a suggestive mark into a strong mark.'" *Network Automation,* 638 F.3d 1149 (citations omitted). "Use of similar marks by third-party companies in the relevant industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Entertainment,* 421 F.3d 1073, 1088 (9th Cir. 2005). Here, the Court finds that the use of similar marks in the relevant skin care industry, as well as the lack of evidence regarding Plaintiff's commercial strength, undermines the strength of the mark. Plaintiff asserts her product is recognized due to its hard-earned reputation. Doc. No. 81 at 9. However, Plaintiff has failed to provide the length of exclusive use and public recognition of the "Baiden" mark. Therefore, this factor weighs against a finding of a likelihood of confusion.

    2. *Evidence of Actual Confusion*

Plaintiff contends that actual confusion of consumers is likely and may be inferred from the fact that some individuals returned a competitors' product to Plaintiff. Doc. No. 81 at 10. Amazon alleges Plaintiff is unable to show actual confusion as

consumers likely are aware that Amazon does not manufacture products when buying Baiden products based on the results of a keyword search. Doc. No. 32 at 18.

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media,* 406 F.3d at 625. "The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove" *Brookfield Commc'ns*, 174 F.3d at 1050. However, "[b]ecause evidence of actual confusion can be difficult to obtain, its absence is generally unnoteworthy and is given little probative weight." *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 842 (9th Cir. 2002) (quotation omitted). "[C]ourts have often discounted [evidence of actual confusion] because it was unclear or insubstantial." *Network Automation,* 638 F.3d at 1137 (internal quotes and citations omitted).

Here, Plaintiff points to a single email message exchange purporting to be evidence of actual confusion. It is unclear as to whether the exchange is between Plaintiff and a customer or Plaintiff and one of her resellers. However, the exchange appears to be one between two Baiden representatives - possibly Plaintiff and a reseller as opposed to Plaintiff and a consumer - in that the parties in the exchange use terms such as "we" or "us", indicative of the parties being on the same sales' team.  These parties are discussing a 'return' of Plaintiff's product wherein the returned package contained a product of both Plaintiff and a competitor. The reasonable inferences from this exchange are that Defendant mistakenly placed a competitor's product in Plaintiff's packaging before the return to Plaintiff or that a customer returned a different type of a competitor's exfoliating product, which was markedly different from Plaintiff's product, in Plaintiff's packaging for what could have been for a number of reasons other than confusion. Assuming that the exchange was with a customer, Plaintiff merely speculates and concludes that Amazon is liable for the customer's confusion without providing any support. Moreover, in that Defendant is not alleged to be involved in manufacturing or packaging Plaintiff's product, the email exchange shows a customer's potential confusion after purchasing a product, rather than showing the product was purchased mistakenly after believing Plaintiff was the owner. *See*

*Instant Media, Inc. v. Microsoft Corp.,* 2007 WL 2318948, at *14 (N.D. Cal. 2007) (holding that "[r]elevant confusion is that which affects purchasing decisions, not confusion generally."). At best, Plaintiff's de minimis evidence of "one potentially confused consumer, stand alone, is not sufficient evidence of actual confusion for this factor to weigh in favor of [Plaintiff]." *Pinterest, Inc. v. Pintrips, Inc.,* 140 F. Supp. 3d 997, 1014 (N.D. Cal. 2015). Accordingly, this factor does not favor a finding that Plaintiff will be able to prove a likelihood of consumer confusion.

### 3. *Type of Goods and Degree of Care by Purchaser*

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media,* 406 F.3d at 634 (citations omitted). Courts look both to the "relative sophistication of the relevant consumer," *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1038 (9th Cir. 2010), and the cost of the item, *Brookfield Commc'ns,* 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser. The Ninth Circuit has held that when products are expensive, the relevant consumer "is a reasonably prudent consumer accustomed to shopping online." *Multi Time Machine, Inc. v. Amazon.com, Inc.,* 804 F.3d 930, 936 (9th Cir. 2015) (citations omitted). "[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Brookfield Commc'ns,* 174 F.3d at 1060. "Low consumer care, in turn, increases the likelihood of confusion." *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1028 (9th Cir. 2004).

Here, the parties dispute as to the degree of care consumers are likely to exercise in purchasing Plaintiff's product. Plaintiff alleges that Amazon's marketplace lists several competitors' products with similar use and function as Plaintiff's products. Doc. No. 81 at 11. Plaintiff further contends that not all of the competitors' products are cheap and unsafe as some products have high customer ratings and reviews. *Id.* at 12. Amazon argues that because the type of goods at issue are to be used on a consumer's face and body, it likely

requires a high degree of precaution and care. Doc. No. 32 at 18. Additionally, Amazon alleges Plaintiff's products are expensive, and as a result, consumers are more cautious before purchasing. *Id.*

Although Plaintiff's products appear to be inexpensive, Amazon's online marketplace shows that they can be viewed as above market standard when compared alongside a competitor's similar products. Amazon contends Plaintiff's Baiden Mitten retails on Amazon for $48.00, where in contrast, a competitor's Korn Exfoliating Bath Washcloth retails on Amazon for $4.49. Although the products may vary in type and quality, consumers are likely to be more aware when purchasing products of higher value and price. Additionally, a reasonably prudent consumer is likely to exercise a high degree of care when purchasing facial and body products. Specifically, to avoid a potential outbreak or allergic reaction. Therefore, a consumer is more likely to exercise a higher degree of care, as opposed to purchasing other types of products. Accordingly, this factor weighs against a finding of a likelihood of confusion.

### 4. *Labeling and Appearance*

The Ninth Circuit has noted that in evaluating trademark infringement in the context of internet searches, there is an additional factor of particular importance: "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Multi Time Mach.,* 804 F.3d at 936. Clear labeling can eliminate the likelihood of initial interest confusion in cases involving internet search terms. *Id.* at 937. In *Playboy,* the Ninth Circuit highlighted that potential consumers were exposed to banner advertisements that were "confusingly labeled or not labeled at all." 354 F.3d at 1023. However, the court explained that clear labeling "might eliminate the likelihood of initial interest confusion that exists." *Id.* at 1030 n. 43.

Here, the parties both agree that the labeling and appearance of Amazon's keyword advertisements are clear. Doc. Nos. 32 at 19; 81 at 13. Nonetheless, Plaintiff alleges that aside from Amazon's clear distinctive labeling and appearance, prospective consumers are distracted by the advertisement and are more likely to end up Amazon's landing page,

instead of Plaintiff's website. Doc. No. 81 at 13. However, even if potential consumers were to click on Amazon's keyword advertisement, this would be intentional and not due to confusion as the sponsored advertisements are clearly distinguishable from the objective search results. *See Playboy*, 354 F.3d at 1030 (the court found it important that Netscape's search engine did not clearly segregate the sponsored advertisements from the objective results). The labeling and appearance of Amazon's sponsored advertisements as they appear on the results page of Google, Yahoo, and Bing all clearly label the keyword as "Ads" and associate the Baiden products with "Amazon.com" to avoid any confusion with Plaintiff's "Baiden" mark. Accordingly, this factor does not favor a finding that Plaintiff will be able to prove a likelihood of consumer confusion.

For the reasons stated above, the Court **GRANTS** Amazon's motion for summary judgment as to Plaintiff's Lanham Act claims.

## II. <u>Tortious Interference</u>

Plaintiff's third cause of action is for tortious interference with Plaintiff's prospective and actual business relations, and interference with an economic advantage. *See* Doc. No. 1, ¶¶ 34–35. Such a claim requires a showing of: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Accordingly, the Plaintiff must establish that the "defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Hsu v. OZ Optics, Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (*citing Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995)). Stated differently, "[i]t is ... the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful." *Hsu*, 211 F.R.D. at 620.

Plaintiff has alleged that her business has experienced an interruption of its ongoing business activities and has suffered irreparable damage to its business reputation and good will as a result of Defendant's pay-per click campaigns. Doc. No. 81 at 15. Defendant argues that Plaintiff's tortious interference claim fails as a matter of law because Amazon's alleged conduct was not a wrongful act independent of the alleged interference itself. *See* Doc. Nos. 32–1 at 27-28; 78 at 5. The Court agrees. "[T]he act of interference with prospective economic advantage is not tortious in and of itself." *Korea Supply Co.*, 29 Cal. 4th at 1159. In *Korea Supply Co.,* the plaintiff satisfied the independent wrongful act requirement by alleging the defendant engaged in bribery and offered sexual favors to Korean officials to obtain a contract from the Republic of Korea. *Id.* Here, Plaintiff alleges that Amazon disrupted business relationships between Plaintiff and her prospected customers, which is the same allegations used to support her Lanham Act claims. However, "an act must be wrongful by some legal measure, rather than merely a product of an improper, but unlawful, purpose or motive." *Korea Supply Co.*, 29 Cal. 4th at 1159, n. 11. Plaintiff has not alleged that Amazon's conduct was independently wrongful by a legal measure beyond the interference.

Furthermore, "[t]he tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." *Id.* at 1158-59. Interference that is based on lawful competition is not actionable. *See generally Bed Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners,* 52 Cal.App.4th 867 (1997) (holding that plaintiff failed to state an actionable claim for intentional interference with a prospective advantage when defendant competed successfully for a lease). Plaintiff has not alleged any exclusive agreement or contract prohibiting Amazon from engaging in lawful competition. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Tortious Interference claim.

///

# CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED:**

    **1.** Defendant's Motion for Summary Judgment [Doc. No. 32] is **GRANTED** in its entirety; and

    **2.** The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff

**IT IS SO ORDERED.**

DATED: August 10, 2020

                                   Hon. John A. Houston
                                   United States District Judge